# Glebus's Estate.

*Wills—Revocation—Nuncupative will—Act of April 8, 1833, P. L. 249.*

1. Declarations by a party on his deathbed as to disposition of his property, with directions to secure a scrivener, cannot operate as a nuncupative will; the desire indicated was rather the disposition of his property by a written instrument.

2. A will drawn by testator's attorney and duly executed in the presence of two witnesses, will not be revoked by the expressed desire of the testator, where it appears that the testator stated his desire to change his will so as to give his estate to his two children by his divorced wife; that he directed that some one be sent for to draw a new will; that he persisted for twenty-four hours thereafter in such desire until he became unconscious and shortly afterwards died; that diligent efforts were made by his divorced wife to secure a scrivener; that testator asked her and a friend of such wife to be "dependable witnesses"; and that five days elapsed, after testator's death, before an alleged nuncupative will, of which the divorced wife was one of the witnesses, was reduced to writing.

3. Such a writing, even if it were a nuncupative will, could not be held to revoke the previous will, in view of the Act of April 8, 1833, P. L. 249, which expressly provides that a prior will can be revoked by a nuncupative will only when the latter is "committed to writing in the lifetime of the testator, and after the writing thereof [is] read to or by him, and allowed by him, and proved to be so done by two or more witnesses."

Argued February 16, 1920. Appeal, No. 84, Jan. T., 1920, by Annie Sinkiewicz, from decree of O. C. Schuylkill Co., dismissing appeal from register of wills in estate of Joseph Glebus. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING and KEPHART, JJ. Affirmed.

126                     GLEBUS'S ESTATE.

Appeal from decision of register of wills refusing to admit to probate an alleged nuncupative will.

The facts appear by the opinion of the Supreme Court.

The court dismissed the appeal, in an opinion by WIL-HELM, P. J., 47 Pa. C. C. R. 451. Annie Sinkiewicz appealed.

*Error assigned* was decree dismissing appeal.

*G. F. Brumm*, with him *George Dyson, William Durkin* and *James B. Reilly*, for appellant.—It is clear that testator wanted to change his written will and to bequeath his personal estate to his children, at least at one time during his last illness, and did all that he could do to accomplish it.

As to the manner and the words used in attempting to do so, they stand uncontradicted by any evidence; nor was an attempt made to do so.

All the requisites of the statute were fulfilled.

Whether or not testator believed that his will would have to be reduced to writing to make it valid, is absolutely irrelevant, and, besides, he said in fact that "if no one would sign," it was to be his will.

A nuncupative will to repeal a written will does not have to be committed to writing in the lifetime of the testator, and read to or by him and allowed by him.

*Daniel J. Ferguson*, for appellee.—A will in writing cannot be revoked by a nuncupation or any mere words: Act of April 8, 1833, P. L. 250.

The written will of Joseph Glebus, now on probate in the register's office, was never revoked by the testator: Evan's App., 58 Pa. 238; Clingan v. Mitcheltree, 31 Pa. 25; Heise v. Heise, 31 Pa. 246; Lewis v. Lewis, 2 W. & S. 455.

A declaration of intention to revoke, is of no effect: Shipler's App., 3 Penny. 272; Rife's App., 110 Pa. 232; Munhall's Est., 234 Pa. 169; Jacoby's Est., 190 Pa. 382.

There was no nuncupation in the case at bar, as the evidence in this case does not measure up to the requirements of the statute and the safeguards provided by decisions of the higher courts: Shover's Est., 258 Pa. 70; Haus v. Palmer, 21 Pa. 296; Porter's App., 10 Pa. 254; Rutt's Est., 200 Pa. 549; Taylor's App., 47 Pa. 31; Wiley's Est., 187 Pa. 82; Butler's Est., 223 Pa. 252; Mellor v. Smyth, 220 Pa. 169; Boyer v. Frick, 4 W. & S. 357; Werkheiser v. Werkheiser, 6 W. & S. 184; Stricker v. Groves, 5 Wh. 386.

OPINION BY MR. CHIEF JUSTICE BROWN, April 12, 1920:

On March 21, 1917, Joseph Glebus executed, in the presence of two subscribing witnesses, a will drawn for him by his attorney. His estate consisted of about $6,000 in personalty, and, after providing for his funeral expenses and burial and making a bequest to a friend, he divided the balance of his estate equally among fourteen named legatees. Early on the morning of the next day —March 22d—the testator expressed a wish to change his will by giving his entire estate to his two children, from whose mother he had been divorced, and he directed that someone be sent for to draw a new will. He persisted, during March 22d, and up to eleven o'clock the next day, in his desire to dispose of his estate by another written will, but unsuccessful efforts were made to secure a scrivener, and, on March 23d, shortly before noon, he lapsed into unconsciousness, dying several hours later. A caveat was filed against the probate of the will executed March 21st, but the register allowed it to be proved and issued letters testamentary to the executor appointed by the testator. From this action an appeal was taken to the orphans' court. Subsequently, what was alleged to be a nuncupative will of the decedent, made March 22, 1917, was offered for probate, but the register refused to receive it. From this an appeal was also taken to the court below, which held that the writ-

ten will of the deceased had not been revoked and stood as the final disposition of his estate. On this appeal, the question for determination is, Did the decedent make a nuncupative will which revoked the written one? The court below, from the testimony submitted on the appeals from the decrees of the register, found that the decedent had not made a nuncupative will. Its finding was that he had merely expressed a wish to make a written disposition of his estate, different from that made by his will of March 21st, and that his expressed wish as to this had not been carried out. This correct view is thus expressed by the learned president judge of the court below: "At first glance it may seem that the alleged statement of Joseph Glebus as to the disposition of his property, and the calling upon his divorced wife and her friend to be 'dependable witnesses,' effected a disposition of his property by nuncupative will, but when it is remembered that the alleged declarations were followed by directions to secure a scrivener, how can it be said that Joseph Glebus made a nuncupative will? If the testimony of the proponents of the nuncupative will is to be believed, he expressed a desire as to how he wished to dispose of his property by means of a written instrument, and he continued and persisted in that desire for more than twenty-four hours after the alleged nuncupative will was made. One of the witnesses to the nuncupative will, his divorced wife, was most active in her efforts to secure a scrivener so that a new will containing the last intention of the testator as to the disposition of his property could be reduced to writing. How, under these circumstances, can it be said that Joseph Glebus intended by his declarations to dispose of his estate by a nuncupative will?"

But even if the decedent had actually made a nuncupative will, what effect would it have had on the written one? The answer to this is found in the Act of April 8, 1833, P. L. 249, which was in force at the time of the decedent's death. Section 14 of that act provides:

"No will in writing concerning any personal estate shall be repealed, nor shall any bequest or direction therein be altered, otherwise than as is hereinbefore provided in the case of real estate, except by a nuncupative will, made under the circumstances aforesaid, and also committed to writing in the lifetime of the testator, and after the writing thereof read to or by him, and allowed by him, and proved to be so done by two or more witnesses." The written will of the deceased made a valid disposition of his estate. The alleged nuncupative will, upon which the appellant relies as a revocation of it, was not reduced to writing until five days after the testator's death, and the contention that it revoked his written will can hardly be given serious consideration, in view of the clear statutory provision as to how, and how only, a nuncupative will can revoke a written will disposing of a testator's estate.

Appeal dismissed at appellant's costs.