---

(No. 14716.—Reversed and remanded.)
HARRY BAKER *et al.* Plaintiffs in Error, *vs.* EMANUEL SALZENSTEIN *et al.* Defendants in Error.

*Opinion filed October 28, 1924—Petition stricken Dec. 3, 1924.*

1. HOMESTEAD—*occupant under contract to purchase is not entitled to homestead as against vendor.* An occupant of land under a contract of purchase is not entitled to homestead as against his vendor.

2. CONTRACTS—*when purchaser acquires all rights of a vendor under contract of purchase.* One who takes a quit-claim deed from a vendor who has a contract for the sale of the land stands in the place of the vendor where he is required to pay all the purchase money under the contract of purchase.

3. MORTGAGES—*when decree sufficiently protects rights of parties where vendee's mortgagee purchases the interest of vendor.* A party who, to secure a loan, has taken an assignment of the vendee's interest in a contract for the purchase of land may purchase the interest of the vendor without waiting to foreclose, and a court of equity, in a proceeding to enjoin forcible detainer, sufficiently protects the vendee's rights by providing in the decree that the vendee pay whatever amounts are due and unpaid under the contract of purchase with the original vendor and in default of such payments the vendee shall forfeit his rights under the contract; but the amount of the loan to the vendee should not be included where his note is not due at the time of the decree.

4. BILLS AND NOTES—*when note constitutes discharge of obligation.* The giving of a promissory note in the place of an already existing obligation operates as a satisfaction of the original obligation only when it is made and accepted as payment thereof, and whether or not it is so given and accepted is a question of fact which depends upon the intention of the parties.

5. SAME—*when receipt for note shows discharge of obligation— forfeiture.* Although a contract for the purchase of land recites

that time is of the essence of the contract, an acceptance of a cash payment on the principal after the same is past due and a note for the interest on deferred payments constitutes a discharge of the obligation of the purchaser and prevents a declaration of forfeiture by the vendor although the note is not paid when due, where the receipt for the note recites that the note was given "to satisfy installment due March 1, 1921, and prior year."

6. EQUITY—*rights of parties are determined as of date of the decree.* While in a suit at law the rights of the parties are determined as of the time of the beginning of the suit, a decree in chancery is a determination of the rights of the parties to the suit according to equity and good conscience, and where relief is granted by a decree in equity it is such as the nature of the case, the law and the facts demand, not at the time of the inception of the litigation but at the time the decree is entered therein.

7. SAME—*equity having once taken jurisdiction will do complete justice.* Where there is any ground of equity jurisdiction, a court of equity having acquired equitable jurisdiction to grant equitable relief will retain the case to do complete justice between the parties.

8. SAME—*equity will adjust legal rights if germane to the suit.* Where a court of equity acquires jurisdiction for one purpose it acquires it for all purposes and will do full and complete justice between all the parties and determine all their rights, not only with reference to matters directly in controversy but as to all matters germane thereto, even though some of the rights are in the nature of legal rights which otherwise could not be enforced outside of a court of law.

9. JUDGMENTS AND DECREES—*when party purchasing vendor's interest is entitled to a money decree for unpaid note of vendee.* A party who, after having taken an assignment of the vendee's interest for the purpose of securing a loan, purchases the interest of the vendor in a contract for the sale of land, is entitled to a money decree for the amount of an unpaid note which the vendee had given the vendor for interest on installments due under the contract and which the vendor had canceled when the purchaser of his interest had paid him in full; but the amount of the note is not a lien on the premises and should not be included in the amount the vendee is required to pay to redeem, where the note was accepted by the vendor in discharge of the interest obligation for which it was given.

FARMER, J., dissenting.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. FRANK W. BURTON, Judge, presiding.

F. P. DRENNAN, and W. J. LAWLER, for plaintiffs in error.

THOMAS D. MASTERS, and WALTER T. DAY, for defendants in error.

Mr. JUSTICE HEARD delivered the opinion of the court:

Plaintiffs in error on February 19, 1922, filed their bill in the circuit court of Sangamon county for an injunction restraining defendants in error from prosecuting an action in forcible entry and detainer before a justice of the peace of that county, and a temporary injunction was issued in accordance with the prayer therefor.

It appears that in October, 1917, Elbert S. Smith was the owner of about 240 acres of land in said county, and on the 25th day of that month entered into a contract with the plaintiffs in error, Harry Baker and his father, Frank Baker, for the sale of the land for the price of $45,000, $1000 to be paid in cash, $3500 March 1, 1918, $2000 (above interest on deferred payments) on March 1, 1919, and not less than $3000 (above interest on deferred payments) on the first day of each March thereafter until the sum of $20,000 on the principal was paid; that then a deed was to be made out to the purchasers and a vendor's lien reserved therein or mortgage made for the balance. The contract contained this clause: "Should said purchasers fail to perform this contract on their part at the time and in the manner herein specified, the earnest money paid as above shall, at the option of the vendor, be forfeited as liquidated damages, including commission payable by the vendor, and this contract shall become null and void. Time is of the essence of this contract and of all the conditions thereof." Under this contract Harry and Frank Baker, together with their families, took possession of the premises and farmed the same thereafter. It appears that

the Bakers were at times in arrears with the payments pro-
vided for in the contract, and that the same were made by
special arrangements by giving notes to the vendor. From
time to time after making the contract Harry Baker bor-
rowed money from the defendant in error the Commercial
Trust and Savings Bank of Springfield, which loans by the
month of June, 1921, amounted to $8500. On the 9th day
of that month he was desirous of securing a further loan
of $5500. The bank declined to advance the additional sum
without additional security for the same and the amount
already borrowed. Harry Baker then represented to the
bank that he had an interest in the land in question and
offered to assign his contract and his right in the land for
the purpose of securing the amounts advanced and the loan
then sought. He also offered to give a chattel mortgage on
his growing crops, farm machinery and livestock. This
loan of $14,000 was effected by the bank taking his note
for $14,000 secured by a chattel mortgage dated June 10,
1921, and due one year after date, and on the 18th day of
June Harry Baker and Kate Baker executed an assignment
of their rights under the contract of purchase. This the
record shows was as a further security for the loan of
$14,000. On presentation of the contract entered into by
Harry Baker and his father, Frank Baker, as vendees, it
was discovered that Frank Baker had assigned all interest
which he had in the contract to Kate Baker, his wife. For
this reason she signed the assignment of the contract to
the bank. It also appears that in March, 1921, the payment
under the contract, amounting to $3000, was not paid when
due. There were also interest and other charges, amount-
ing to $2442, which were unpaid, and on April 23, 1921,
Harry Baker paid $3000 and gave his note to the vendor
for the sum of $2442. This note was due in sixty days
but was not paid, and on November 1, 1921, the vendor
served notice that he had elected to declare the contract for-

feited for failure to make the payments due on March 1, 1921, and demanded possession of the premises on January 1, 1922. The vendor thereafter sold the premises to the defendant in error bank and conveyed the same by quit-claim deed for the balance due and unpaid on the contract and on said $2442 note, amounting to $37,213.85. This sum was paid by the bank, the deed being executed to Emanuel Salzenstein, as trustee for the bank.

Previous to notice of forfeiture of the contract by the vendor, Frank and Harry Baker, in October, 1921, filed their voluntary petitions in bankruptcy in the Federal court and were adjudged bankrupts. They remained, however, in possession of this farm until the proceedings to evict them by forcible entry and detainer were started. On February 20, 1922, the day before the hearing on the forcible entry and detainer suit they filed a bill in this case for injunction. Salzenstein, as trustee, filed his answer thereto, and also his cross-bill, praying that the whole proceedings be passed upon and the rights of the parties be adjudicated with reference to the possession of the premises and praying immediate possession thereof. The issues were made up and the cause heard by the chancellor in open court, who rendered a decree reciting findings of fact, and holding that Salzenstein, as trustee, was owner of the premises; that the plaintiffs in error were indebted to the defendant in error bank in the sum of $14,000, money loaned and due; that the plaintiffs in error by valid conveyance assigned the contract to the bank as security for such loan, and that the unpaid sums on the contract, with the loan, amounted to the sum of $22,120.15. The decree directed that unless the plaintiffs in error, or some one or more of them, pay said sum on a short day therein fixed by the court, the trustee of the bank should be put into immediate possession, and that in case they did make such payments they should have the right to continue the future payments under the contract to the bank as holder of the legal title by reason of

the conveyance from the original vendor. Plaintiffs in error prayed an appeal, which was allowed on filing a bond in the sum of $30,000. Failing to file such bond within the time decreed by the court, they bring the cause here by writ of error.

Plaintiffs in error, aside from their contention that the vendor did not have the right of forfeiture when he attempted to declare the same nor at the time they filed their bill, (which contentions will be hereinafter considered,) also urge that it was unnecessary for the defendant in error bank to pay the vendor, Smith, the whole of the unpaid purchase price in order to protect itself under the assignment. The chancellor found, as a matter of fact, that such purchase was necessary, and his finding appears to be supported by the record.

Plaintiffs in error contend that the assignment was not valid for the reason that they had a homestead interest in the land which was not assigned, as the assignment was not signed by the husband of Kate Baker or the wife of Harry Baker. An occupant of land under a contract of purchase is not entitled to homestead as against his vendor. (*Stafford* v. *Woods,* 144 Ill. 203; *Watson* v. *Saxer,* 102 id. 585; *Allen* v. *Hawley,* 66 id. 164; Hurd's Stat. chap. 52, sec. 3.) Plaintiffs in error concede this to be true so far as the original vendor is concerned, but contend that trustee Salzenstein does not stand in the same relation to the contract. The rule is, that anyone who is compelled to pay all the purchase money to protect his rights under the contract of purchase stands in the place of the vendor. *Blue* v. *Blue,* 38 Ill. 9.

It is also urged that the assignment of plaintiffs in error to the bank was not valid as an assignment but as a mortgage and that the bank should have proceeded to foreclose the mortgage. While the assignment in question complies with section 1 of the Conveyance act (Hurd's Stat. chap. 30, sec. 1,) and was executed for a valuable consid-

eration, it was, as the record shows, executed and delivered as a security for the payment of the note, which was not due by its terms at the time of the purchase of the vendor's interest by the bank. The court, however, gave the assignors opportunity to redeem this contract, thereby treating it as a pledge.

Plaintiffs in error make the further contention that the note for $2442 given to the vendor, Smith, was, with the payment of the $3000 made on April 23, 1921, a payment in full of all charges due on the contract up to March 1, 1921, including interest, and that when the vendor served notice that he had elected to forfeit the contract for failure to make the payment due on March 1, 1921, and demanded possession, he was wholly without right to declare the contract forfeited; that the note was given and accepted as a discharge of the March 1, 1921, payment; that since the forfeiture was attempted prior to the accruing of another payment on the contract it was declared without right; and that as the bill in this case was filed on February 19, 1922, no further payments had become due, and plaintiffs in error at the time of the filing of the bill were entitled to the relief prayed. The rule in this State is that the giving of a promissory note in the place of an already existing obligation does not, of itself, operate as a satisfaction of the original obligation unless it is made and accepted as payment thereof. Whether or not it was so given and accepted is a question of fact which depends upon the intention of the parties. (*Boulter* v. *Joliet Nat. Bank,* 295 Ill. 594.) If such note is made and accepted for such purpose the former obligation is satisfied. *Belleville Savings Bank* v. *Bornman,* 124 Ill. 200; *Jansen* v. *Grimshaw,* 125 id. 468.

It is not denied that the note for $2442 was not paid when due, but it is contended that that fact did not give the vendor a right to declare a forfeiture. If the note was made and accepted as payment of the sum due March 1,

1921, under the terms of the contract, this is true. That question was a question of fact.

Defendants in error argue that there was no intention on the part of the vendor to accept the note in payment of the amount due under the contract, and that this is shown by the fact that the note of April 23, 1921, was canceled. Whether or not the note was, after its delivery and acceptance, canceled is not material in determining the question as to how and for what purpose it was made and accepted.

The record shows that on April 23, when the note was executed and the sum of $3000 cash was paid, the vendor executed and delivered the following receipt:

"*April 23, 1921.*

"Received of Harry Baker $3000, to apply on contract dated Oct. 25, 1917, for purchase of land in Talkington township, balance of past installments now past due, with interest thereon, $2442, for which note is given to satisfy installment due March 1, 1921, and prior year."

It seems clear from the language of this receipt that it was the purpose of the vendor to accept the note in payment of the amount due on March 1, 1921, under the contract. The language for which the note is given, "to satisfy installment due March 1, 1921, and prior year," is clear and unambiguous, and plainly shows the intention to accept the note in payment of the amount due under the contract. This being true, the cancellation of the note could not reinstate the claim for amount due March 1, 1921, as an unpaid installment under the contract. The vendor therefore had no right, at the time he declared a forfeiture, to do so, and at the time of the filing of the bill herein, no installment having in the meantime become due, plaintiffs in error were entitled to the injunction prayed.

While in a suit at law the rights of the parties are determined as of the time of the beginning of the suit, a decree in chancery is a determination of the rights of the parties to the suit according to equity and good conscience, and where relief is granted by a decree in equity it is such

as the nature of the case, the law and the facts demand, not at the time of the inception of the litigation but at the time the decree is entered therein. (*Superior Oil and Gas Co.* v. *Mehlin,* 108 Pac. 545; *Randell* v. *Brown,* 43 U. S. 405; *Peck* v. *Goodberlett,* 100 N. Y. 180; 10 R. C. L. 559.) The decree in this case was entered April 17, 1922. By the contract in evidence a payment of $3000, with interest upon deferred payments, amounting to $1625, became due March 1, 1922, which payment had not been made at the time of the rendition of the decree.

It is the doctrine of equity that where there is any ground of equity jurisdiction, a court of equity having acquired equitable jurisdiction to grant equitable relief will retain the case to do complete justice between the parties. (*Miller* v. *Rowan,* 251 Ill. 344; *McIntyre* v. *McIntyre,* 287 id. 544.) It was therefore proper for the court, in order to do complete justice between the parties, to require plaintiffs in error, in accordance with the defendants in error's cross-bill, within a short day fixed by the court, to pay to defendants in error any amounts due and unpaid upon the contract of purchase by plaintiffs in error at the time of the rendition of the decree, and such amount, if any, as was then due from plaintiffs in error to defendants in error by reason of the assignment from plaintiffs, in error to defendants in error within a time found by the court, and to decree that in default of such payment all plaintiffs in error's right, title and interest under the terms of such contract should in equity be forfeited and the legal and equitable title to the real estate declared vested in Salzenstein as trustee, he being vested with all the rights which Smith originally had under the contract of October 25, 1917.

The court included in the amount which it required plaintiffs in error to pay to defendants in error the amount of the note payable to the Commercial Trust and Savings Bank of Springfield, to secure which the assignment was made, which note, according to the evidence, was not then

due. At the time of such assignment of the premises possession was not delivered by plaintiffs in error, nor by the terms of the contract were they under any obligation to deliver up possession of such premises prior to default in paying the note after it became due, and the court should not have included the amount of such note, prior to its becoming due, in the amount which it required plaintiffs in error to pay to redeem the premises.

The court also included in the amount required for redemption the amount of the note for $2442 and interest, heretofore mentioned. As we have seen, this note was not a note given in pursuance of the contract of purchase for the real estate but was a note given as a payment upon such contract price. It was not secured by a vendor's lien nor was it in any other manner a lien upon the premises in question, and should not have been included in the amount required for redemption by the decree. While at the time of the transfer of the premises from Smith to Salzenstein this note for $2442 was not assigned by Smith to Salzenstein but was by Smith marked canceled and it remained in his possession up to the time of the trial, the evidence shows that the amount of this note and interest was included in the amount paid to Smith, and that it was the intention of the parties that all claims which Smith had against plaintiffs in error should be included in the purchase. Salzenstein, as trustee for the bank, therefore became the equitable owner of the note in question, and the note, although not directly involved therein, was a matter germane to the litigation; and it is likewise a well known rule that when a court of equity acquires jurisdiction for one purpose it acquires it for all purposes, and will do full and complete justice between all the parties and determine all their rights, not only with reference to the matters directly in controversy but as to all matters germane thereto. It makes no difference that some of these rights may be in the nature of legal rights which otherwise could not be

enforced outside of a court of law. (*Wehrheim* v. *Smith,* 226 Ill. 346; 10 R. C. L. 370.) While defendants in error were not entitled to have the amount of this note included in the amount required for redemption, they were entitled in this action to a money decree for the same, with award of execution.

For the errors indicated the decree of the circuit court is reversed and the cause remanded to the circuit court of Sangamon county, with directions to enter a decree requiring plaintiffs in error to pay to or for the use of the Commercial Trust and Savings Bank of Springfield such sum as such court may find to be due from plaintiffs in error, if any, by virtue of the contract of purchase from Smith, and also directing plaintiff in error Harry Baker to pay such sum, if any, as may be found due by virtue of the indebtedness secured by the assignment from plaintiffs in error to Salzenstein within a short day to be fixed by the court, and that in the event of the failure to so pay said sum of money within the time fixed by the court, all their right, title and interest under the terms of the vendor's contract be in equity forfeited and the legal and equitable title to said real estate declared to be vested in the holder of the legal title, Salzenstein, in trust for the use and benefit of the Commercial Trust and Savings Bank of Springfield, and if in the meantime plaintiffs in error have been dispossessed of said premises, that they be restored to the possession thereof upon making such payments, and that the court enter a money decree in favor of Salzenstein, for the use and benefit of the bank, for the amount, if any, found due upon the $2442 note, with award of execution therefor.

*Reversed and remanded, with directions.*

Mr. Justice Farmer, dissenting.